# EXHIBIT 1

# INTERNATIONAL COURT OF ARBITRATION
# INTERNATIONAL CHAMBER OF COMMERCE

## Case No. 21945/ZF

Between

## A&C CONSTRUCTION & INSTALLATION CO. WLL

(Doha, Qatar)

**Claimant**

and

## BLACK CAT ENGINEERING & CONSTRUCTION WLL

(Doha, Qatar)

**Respondent**

---

### TERMS OF REFERENCE
In accordance with Article 23 of the ICC Arbitration Rules

---

21 March 2017

Place of Arbitration:
Doha, State of Qatar

## TABLE OF CONTENTS

I. THE PARTIES AND THEIR REPRESENTATIVES    3
  A. Claimant    3
  B. Respondent    3

II. THE ARBITRAL TRIBUNAL    4

III. SECRETARIAT COUNSEL OF THE ICC INTERNATIONAL COURT OF ARBITRATION    4

IV. NOTIFICATIONS AND COMMUNICATIONS    4

V. BACKGROUND OF THE DISPUTE    5

VI. PROCEDURAL HISTORY    6

VII. SUMMARY OF THE PARTIES' POSITION AND RELIEF SOUGHT    7
  A. Claimants' Request for Arbitration    7
  B. Relief Sought by Claimant    8
  C. Respondent's Answer to the Request    9
  D. Relief Sought by Respondent    9

VIII. ISSUES TO BE DECIDED    9

IX. THE ARBITRATION CLAUSE    10

X. THE APPLICABLE SUBSTANTIVE LAW    10

XI. PROCEDURAL RULES    10
  A. Applicable rules    10
  B. Place of arbitration    11
  C. Language of the proceedings    11
  D. Amount in dispute    11
  E. Provisional timetable of the proceedings    11

XII. VAT    11

XIII. DATE AND SIGNATURE    11

I. THE PARTIES AND THEIR REPRESENTATIVES

A. **Claimant**

1. Claimant in this arbitration is **A&C Construction & Installation Co. WLL** (hereinafter referred to as "**A&C**" or "**Claimant**"), a company incorporated at the Ministry of Economy and Commerce with Commercial Registration No. 32477 in the State of Qatar, having its registered office at:

   A&C Construction & Installation Co. WLL
   P. O. Box 177
   Doha, Qatar
   T: +974 44329334
   F: +974 44329395

2. Claimant is represented by:

   Mr Abram Moore, Mr. Matthew Walker, Mr Alexios Hallak
   K&L GATES LLP
   31st Floor, Tornado Tower
   Al Funduq Street, West Bay
   P.O. Box 26100
   Doha, State of Qatar
   Tel: +974 4424 6107
   Fax: +974 4424 6101
   Email: abe.moore@klgates.com, matthew.walker@klgates.com, alexi.hallak@klgates.com

   Sultan Al-Abdulla & Partners
   Level 20, Al Fardan Towers
   Al Funduq Street, West Bay
   P.O. Box 177
   Doha, State of Qatar
   Tel: +974 4442 0660
   Fax: +974 4442 0663
   Email: alabdulla@qatarlaw.com, wcattan@qatarlaw.com

B. **Respondent**

   Respondent in this arbitration is **Black Cat Engineering & Construction WLL** (hereinafter referred to as "**Black Cat**" or "**Respondent**"), a company duly organized and existing under the laws of Qatar with Commercial Registration No. 10756 and located at:

   Black Cat Engineering & Construction WLL
   PO Box 12714
   Al Brooq Building, 3rd Floor
   Bin Mahmoud Street
   Doha, State of Qatar

    T: +974 4428 0333
    F: +974 4442 9899

3.  Respondent is represented by:

    Mr Jonathan Collier, Paul Fisher
    PINSENT MASONS LLP
    PO Box 22758. Tornado Tower
    West Bay, Doha
    State of Qatar
    Email: jonathan.collier@pinsentmasons.com, paul.fisher@pinsentmasons.com

    Ms Anita Hormis
    PINSENT MASONS LLP
    PO Box 115580
    The Offices 1
    One Central
    Dubai, United Arab Emirates
    Email: anita.hormis@pinsentmasons.com

    Sharq Law Firm
    Level 17, Alfardan Office Tower
    West Bay
    P.O. Box 6997
    Doha, State of Qatar
    a.amin@sharqlawfirm.com

4.  Claimant and Respondent are collectively referred to as the **"Parties"**.

## II. THE ARBITRAL TRIBUNAL

5.  At its session of 24 November 2016, the ICC International Court of Arbitration (hereinafter referred to as the **"Court"**), pursuant to Article 13(3) of the 2012 Rules of Arbitration of the ICC and upon the Canadian National Committee's proposal, appointed as Sole Arbitrator ( also referred to as "Arbitral Tribunal"):

    Mr Victor Leginsky
    Villa A05
    Arenco Villas
    Al Sufouh 2
    P.O. Box 214990
    Dubai, United Arab Emirates
    T: +971 50 457 3770
    F: +971 4 451 8346
    E: vleginsky@arbitralis.com

III.   SECRETARIAT OF THE ICC INTERNATIONAL COURT OF ARBITRATION

6. As specified in Section XI-A below, this arbitration is conducted under the 2012 Rules of Arbitration of the ICC (hereinafter referred to as the "**ICC Rules**"). Counsel in charge of the file at the Secretariat of the ICC International Court of Arbitration (hereinafter referred to as the "**Secretariat**") is Ms Živa Filipič (+33 1 49 53 28 32; fax: +33 1 49 53 57 80; email: ica5@iccwbo.org), together with Deputy Counsel Mr Pedro Arcoverde (+33 1 49 53 28 16), at 33-43, avenue du Président Wilson, 75116 Paris, France.

IV.   NOTIFICATIONS AND COMMUNICATIONS

7. Each Party shall submit simultaneously to the Sole Arbitrator and to the other Party's Counsel a copy of each communication, brief or document to be submitted to the Arbitral Tribunal, with a copy to the Secretariat in electronic format only.

8. Any and all communications in this arbitration shall be valid if made to the above-mentioned addresses.

9. A copy of the Arbitral Tribunal's decisions/orders signed by the Arbitral Tribunal shall be communicated by courier. Its other communications may be made by email.

10. The Parties, their Counsel as well as the Arbitral Tribunal are to notify immediately all Parties to and signatories of the present Terms of Reference and the Secretariat of any change of name, description, address, telephone, fax, email address, etc. Failing such notification, communications sent in accordance with the present provisions shall be valid.

V.   BACKGROUND OF THE DISPUTE

11. The following facts are provided as background information only and are not intended to pre-judge any issue that may arise in this arbitration in relation to any such facts.

12. On 16 October 2011, Claimant entered into a Preliminary Joint Venture Agreement with Respondent (the "**JVA**") to bid on works in relation to United States Army Corps of Engineers' ("**USACE's**") tender (through companies such as AMEC or ANHAM) for certain construction on the Blatchford-Preston Complex at the Al Udeid air base in Qatar (the "**Project**").

13. On 11 September 2012, the Respondent submitted to AMEC a "tender in a joint venture with [the Claimant]" for the construction of two billet buildings "including demolition,

earthworks, paving and site utilities" on the Project. This bid was rejected and AMEC invited Black Cat to submit a tender in its own name.

14. On 1 October 2012, AMEC and the Respondent entered into a contract for the provision of all labour, materials, equipment and supervision in respect of the construction of 2 billet buildings (the "**MEP Works**"). The Claimant and the Respondent contracted via the Subcontract Alliance Agreement dated 31 January 2013 for the MEP Works (the "**MEP Agreement**").

15. On 24 January 2013, AMEC and the Respondent entered into a contract to provide the internal fire suppression construction for the 2 billet buildings ("**Fire Suppression Work**"). The Claimant and the Respondent contracted via the Subcontract Alliance Agreement dated 1 July 2013 for the Fire Suppression Work (the "**Fire Suppression Agreement**").

16. A dispute arose between the Parties in connection with the Fire Suppression Work and/or the termination or alleged termination of the Fire Suppression Agreement, and/or the alleged breach of the JVA.

## VI. PROCEDURAL HISTORY

17. On 12 May 2016, Claimant filed with the Secretariat its Request for Arbitration (hereinafter referred to as the "**Request**"), together with 4 appendices. As the JVA's arbitration clause stipulated that disputes be heard "by one or three arbitrators appointed in accordance with the [ICC] Rules", Claimant suggested that the dispute be settled by one arbitrator as, *inter alia*, the "sums in issue in the arbitration are relatively modest".

18. On 17 May 2016, the Secretariat acknowledged receipt of Claimant's Request and assigned the present case number.

19. On 17 June 2016, the Secretariat notified Claimant's Request to Respondent. It invited Respondent to provide its Answer to the Request ("**Answer**") and to comment on the number of arbitrators and, as the case may be, on Claimant's proposed qualifications for the sole arbitrator in its Answer or any request for an extension of time for submitting its Answer.

20. On 13 July 2016, the Respondent requested an extension of time for submitting its Answer to 6 September 2016, and, due to alleged complexity of this dispute, requested an Arbitral Tribunal comprising 3 arbitrators.

21. On 20 July 2016, the Secretariat noted Respondent's request and gave a preliminary extension of time until 22 August 2016 for its Answer (asking for the Claimant's position on a further extension), and requested payment of the provisional advance on costs.

22. On 23 July 2016 the Claimant sent a letter, dated 22 July 2016, to the Secretariat disagreeing with any further extension of time for the Answer, and restating its position that a sole arbitrator be appointed.

23. On 22 August 2016 the Respondent provided its Answer, setting out its jurisdictional plea and restating its position that 3 arbitrators be appointed.

24. On 22 August 2016, the Secretariat acknowledged Respondent's Answer and further noted that the provisional advance on costs had been paid. It requested the Respondent to provide comments on the qualifications of suggested nominee and chairperson. By letter dated 30 August 2016 the Respondent provided those requested comments.

25. On 1 September 2016, the Secretariat wrote to the Parties informing them that, on the same date, the Court had decided to submit the arbitration to one arbitrator (Article 12(2)) and fix the advance on costs at US$80,000, subject to later readjustments (Article 36(2)), and further invited the Parties to jointly nominate the sole arbitrator by 15 September 2016.

26. On 22 September 2016, the Secretariat wrote to the Parties informing them that, on the same date, the Court had decided to take the necessary steps for the appointment of the sole arbitrator (Article 13(3)).

27. On 8 October 2016, the Secretariat wrote to the Parties informing them that, on 6 October 2016, the Court appointed Ms. Erin Miller Rankin as sole arbitrator upon the Canadian National Committee's proposal (Article 13(3)).

28. On 10 November 2016, the Secretariat wrote to the Parties informing them that, on the same date, the Court accepted Ms. Miller Rankin's resignation acting as sole arbitrator (Article 15(1)) and indicated to the Parties that it took the necessary steps for the appointment of the sole arbitrator (Article 13(3).

29. On 24 November 2016, the Secretariat wrote to the Parties informing them that, on the same date, the Court appointed Mr Victor P Leginsky as sole arbitrator upon the Canadian National Committee's proposal (Article 13(3)).

30. On 25 November 2016, Victor P Leginsky wrote to the Parties informing them of his appointment by the Court as the Sole Arbitrator. He invited the Parties to agree on the

date and the formalities of a Case Management Conference.

31. On 26 November 2016, Victor P Leginsky wrote to the Parties attaching draft Terms of Reference and draft Specific Procedural Rules for use in the proceedings, requesting the Claimant to provide its comments by 4 December 2016 and the Respondent to provide its, on the Claimant's, by 11 December 2016.

32. On 25 January 2017, the first Case Management Conference was held by telephone conference pursuant to Article 24(4) of the ICC Rules.

## VII. SUMMARY OF THE PARTIES' POSITION AND RELIEF SOUGHT

33. The purpose of the following summaries, provided by the Parties at the Arbitral Tribunal's request, is to satisfy the requirements of Article 23(1)(c) of the ICC Rules, without prejudice to any other or further allegations, arguments or contentions contained in the pleadings or submissions already filed and in such submissions as will be made in the course of this arbitration. No statement or omission in the summary of either Party is to be interpreted as a waiver of any issue of fact or law. By signing these Terms of Reference, neither Party subscribes to or acquiesces in the summary of the other Party. By accepting such summaries, the Arbitral Tribunal expresses no views whatsoever as to the relevance of the facts set out, the relevance or validity of any agreements mentioned or any rights, defences or objections asserted, made or raised by either Party.

### A. Claimant's Request for Arbitration

34. This action arises because Respondent has purported to terminate the Fire Suppression Agreement "for convenience" and without paying Claimant the profits to which it is entitled pursuant to the JVA. Respondent has no contractual right to terminate for convenience. Even if Respondent did have such a right, it would not be entitled to terminate the Fire Suppression Agreement and refuse to compensate Claimant in bad faith and unlawfully as it has here.

35. Claimant brings the following claims against Respondent:

   a. *Breach of the JVA by Respondent* - The JVA is a valid and binding contract between Claimant and Respondent. The JVA is a foundational agreement, the terms of which have also been incorporated into the Fire Suppression Agreement. Respondent has breached the JVA by, among other things: (i) terminating the Fire Suppression Agreement while refusing to pay Claimant its share of the profits under the JVA; and (ii) taking over and/or assigning

responsibility for the Fire Suppression Works in violation of the express terms of the JVA.

b. *Breach of Respondent's obligation of good faith* - Respondent's termination of the Fire Suppression Agreement without cause or compensation constitutes bad faith conduct in violation of Article 172 of the Qatari Civil Code. As further detailed in the Request for Arbitration, Respondent terminated the Fire Suppression Agreement only after it became clear that this contract was about to become significantly more profitable. Respondent, hoping to keep all of the profits for itself, simply terminated Claimant and refused to provide any justification whatsoever for its bad faith conduct.

c. *Respondent's Unlawful exercise of a right* - Even if Respondent had a right to terminate Claimant under the Fire Suppression Agreement without compensation, the exercise of such right would be unlawful pursuant to Article 63 of the Qatari Civil Code. Article 63 states that the exercise of a right is unlawful if its only intention is to harm another or if by its nature it causes excessive or unaccustomed damage to the other. Respondent's termination of the Fire Suppression Agreement, without Respondent having been terminated by AMEC, is totally inappropriate and contrary to the industry norm for joint venture partners in the construction industry and the damage caused to Claimant as a result of such termination would be totally excessive and disproportionate.

B. **Relief Sought by Claimant**

36. Without prejudice to Claimant's right to supplement the same during the course of the Arbitration, Claimant seeks the following:

   a. Respondent shall compensate Claimant for all costs it has incurred to date associated with the performance of the Fire Suppression Work (an amount currently estimated at US$472,000);

   b. Claimant shall receive 50% of any and all profits that Respondent earns as a result of performing the Fire Suppression Work (an amount currently estimated at US$370,000);

   c. Moral damages for Respondent's conduct in violation of Articles 172 and 63 of the Qatari Civil Code in the sum of US$168,400 (being 20% of the sum in issue, an amount falling within the normal contemplation of moral damages), pursuant to Articles 202, 203 and 264 of the Qatari Civil Code;

d. Interest (including interest on the costs) at such rate and for such a period as the Arbitral Tribunal shall determine;

e. Claimant's costs of these proceedings, including legal and arbitral fees; and

f. Such further and other relief as the Arbitral Tribunal finds just and equitable.

C. **Respondent's Answer to the Request**

37. The arbitral tribunal has no jurisdiction in relation to the purported claims as set out in the Request. This includes, but is not limited to, the following:
    a. A&C has mischaracterised the alleged breaches of contract as breaches of the JVA. The dispute arises out of alleged breaches of the Fire Suppression Agreement between A&C and BCEC. The Fire Suppression Agreement contains no agreement to refer a dispute to arbitration; and
    b. Even if the breaches arise out of the JVA, which is denied, the JVA does not contain a valid arbitration agreement.

38. Accordingly, BCEC respectfully submits that an arbitral tribunal has no jurisdiction in this matter. Instead the proper forum is the Qatari courts.

39. BCEC's participation in the Answer is without prejudice to its position that the arbitral tribunal has no jurisdiction.

40. It is wrong to say that the "joint venture....was awarded the MEP works and the Fire Suppression works". It was BCEC that was awarded these works, not any "joint venture". BCEC subcontracted these works to A&C and throughout the project, all aspects of the parties' relationship has been as contractor/subcontractor.

41. On 16 December 2015 the Fire Suppression Agreement was terminated for convenience by BCEC in accordance with clause 29 (dated 1 October 2012 between AMEC and BCEC, which is incorporated by reference into the Fire Suppression Agreement and accordingly applies as between BCEC and A&C). There were serious failures by A&C in its performance of the Fire Suppression Agreement. BCEC requested that A&C provide details of any legitimate costs incurred as at the date of breach. A&C have as yet failed to provide any substantiating evidence for such costs.

42. The Respondent denies that the Claimant has any entitlement to the relief sought in the Request.

D. **Relief Sought by Respondent**

43. BCEC respectfully requests the tribunal appointed in this matter to declare that:

    a. It does not have jurisdiction in this matter; and

    b. in the alternative, A&C has no entitlement to the relief sought in the Request.

## VIII. ISSUES TO BE DECIDED

44. Subject to Article 23(4) of the ICC Rules, the issues to be determined by the Arbitral Tribunal shall be those resulting from the Parties' submissions, statements and pleadings including forthcoming submissions, statements and pleadings and which are relevant to the adjudication of the Parties' respective claims and defences.

45. This does not limit the rights of the Parties to introduce new allegations of facts or new legal arguments and to raise further relevant issues. New claims will be dealt with in accordance with Article 23(4) of the ICC Rules.

## IX. THE ARBITRATION CLAUSE

46. The arbitration clause is contained in Clause 7 of the JVA, "Disputes/Law", at sub-clause 7.1, and reads as follows:

> *"7.1 Any dispute arising out of or in connection with this JVA, which cannot be settled amicably by the Senior Management for the Parties within twenty eight (28) days following the receipt by the Party at fault of a notice from the claiming Party, shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or three arbitrators appointed in accordance with the said Rules. The venue of arbitration shall be Doha, State of Qatar. The arbitration proceedings shall be conducted in English. The arbitration award shall be final, binding on the Parties, and enforceable with any court of competent jurisdiction."*

47. The applicability of this clause is challenged by the Respondent in its jurisdictional plea.

48. For the avoidance of doubt, upon signing these Terms of Reference, the parties confirm that no provision within them constitutes an arbitration agreement between the parties.

## X. THE APPLICABLE SUBSTANTIVE LAW

49. According to Clause 7 of the JVA, sub-clause 7.2, "*[t]his JVA shall in all respects be governed, construed and interpreted in accordance with the laws of the State of Qatar*"..

50. The applicability of this clause is challenged by the Respondent as part of its jurisdictional plea.

### XI. PROCEDURAL RULES

#### A. Applicable rules

51. The present arbitration shall be conducted in accordance with the mandatory rules of the law of the State of Qatar, the ICC Arbitration Rules in force as from 1st January, 2012, the present Terms of Reference and "Specific Procedural Rules" to be issued by the Arbitral Tribunal after consultation with the Parties. Where these mandatory provisions or the Specific Procedural Rules are silent and failing a specific agreement between the Parties the proceedings shall be governed by the rules which the Arbitral Tribunal deems appropriate.

52. The Parties grant the Arbitral Tribunal the power to issue procedural orders on specific procedural issues if and when needed.

53. The Arbitral Tribunal shall not assume the powers of an amiable compositeur or decide ex aequo et bono.

#### B. Place of arbitration

54. The Parties agree that the arbitration clause provides for Doha, State of Qatar as the place of arbitration.

55. In accordance with Article 18(2) of the ICC Rules, the Arbitral Tribunal may after consultation with the Parties, conduct hearings and meetings at any location it considers appropriate, unless otherwise agreed by the Parties.

#### C. Language of the proceedings

56. According to the arbitration clause, the language of the proceedings is English.

#### D. Amount in dispute

57. The amount in dispute is currently quantified at US$1,010,400.00 plus interest and all of the Claimant's costs of these proceedings (including legal and arbitral fees).

#### E. Provisional timetable of the proceedings

58. To be issued, after consultation with the Parties, at the date of signing hereof, or as soon as possible thereafter.

## XII. VAT

59. It is understood by the Parties and the sole arbitrator that Appendix III, Article 2, paragraph 13 of the ICC Rules is applicable. This paragraph provides: "*Amounts paid to the arbitrator do not include any possible value added tax (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties*".

60. As between them and the arbitrators, the Parties take note that the Sole Arbitrator may have to pay value added tax on his fees and expenses. To the extent that this is the case, the sole arbitrator subject to VAT is entitled to claim, directly from the Parties, in addition to any entitlements received from the ICC, any value-added taxes to be paid by him. The Parties will jointly and severally be obliged to pay such taxes on demand. The arbitrator, if subject to VAT, may request the Parties to pay under the same conditions a retainer on VAT..

## XIII. DATE AND SIGNATURE

61. These Terms of Reference are signed in four originals by the persons mentioned hereafter and may be executed by counsel of the Parties, who hereby represent that they have the authority to execute this document on behalf of their respective clients as evidenced by the submitted Powers of Attorney.

Place of Arbitration: Doha, Qatar.

Date: 21 March 2016

_____
(Doha, Qatar)

Pinsent Masons LLP - QFC Branch
Authorised by Qatar Financial Centre Authority
(QFC No: 00154)

_____
(Doha, Qatar)

_____
Mr Victor P Leginsky, Sole Arbitrator