IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| United States of America for use and benefit of A&C Construction & Installation. CO. WLL,<br><br>Plaintiff,<br><br>v.<br><br>Zurich American Insurance Company and The Insurance Company of the State of Pennsylvania,<br><br>Defendants. | Case No. 1:17-cv-04307<br><br>Assigned Judge:<br>Harry D. Leinenweber<br><br>Designated Magistrate Judge:<br>Marie Valdez |

**PLAINTIFF'S STATUS REPORT
REGARDING PENDING MOTIONS AND DISCOVERY DISPUTES**

Plaintiff A&C Construction & Installation. CO. WLL ("A&C" or "Plaintiff") submits this Status Report and in support of same, states as follows:

As an initial matter, the parties are presenting separate reports because they were at an impasse regarding the format, order, and proper scope of the report. As is customary in joint reports, A&C, as plaintiff, sought to present its report on each of the pending issues first, addressing the matters that have been raised by Defendants' motions. Defendants Zurich American Insurance Company and The Insurance Company of the State of Pennsylvania (the "Sureties" or "Defendants") disagreed, arguing that they must be entitled to first re-argue their position on each of their motions, effectively seeking the opportunity to argue each of their motions twice before allowing Plaintiff to respond. Defendants refused to submit a joint report unless they were permitted to re-argue each of their motions before Plaintiff responded.

Discovery is proceeding on all matters. Although the Court partially granted Defendants' motion to stay discovery relating to the fire suppression work performed by Plaintiff, the parties have now agreed to proceed with discovery on the fire suppression work in order to maximize

efficiency. No discovery deadlines have yet been set in this matter.

In addition to the Sureties' three discovery motions discussed below, Plaintiff has filed a **Motion to Strike Defendants' Affirmative Defenses (Dkt. No. 81)**. In a nutshell, each of Defendants' Affirmative Defenses is plead as a conclusory one-line recitation, without a single fact providing Plaintiff with notice of what Defendants intend to argue. Defendants have not responded to Plaintiff's motion to strike.

In the three sections below, Plaintiff summarizes (1) the status of the document productions; (2) the status of the parties' interrogatory answers; and (3) the status of depositions, including the status of the three pending motions relating to these issues. It should be noted that Defendants filed their two recent motions to compel despite the fact that Plaintiff agreed to address the concerns raised by Defendants, and that Defendants have refused to withdraw the motions although by any measure Plaintiff has now fully resolved the very issues Defendants complained about.

1. **Status of Document Production and Pending Motion Regarding Same**

*Defendants' document production.* Defendants have produced fewer than 131 pages of documents, claiming to have no documents relating to either Plaintiff's work on the project or the work of their principal, AMEC.

*AMEC's document production.* On September 11, 2018, the Court ordered AMEC to produce certain documents responsive to Plaintiff's subpoena. On October 11, 2018, AMEC produced 14,834 pages of documents. Plaintiff is reviewing the document production to determine whether AMEC has complied with the Court's order.

*USACE document production.* Pursuant to a subpoena, the United States Army Corps of Engineers ("USACE"), the owner of the air base in Qatar where Plaintiff performed its work, has

2

produced certain documents. However, the USACE has withheld documents on the basis that they may include AMEC's confidential or proprietary information. AMEC made the same objection and the Court overruled it and ordered AMEC to produce responsive documents. Plaintiff has asked the USACE to reconsider its position in light of the Court's order, but this issue may ripen into a motion to compel the USACE to produce its responsive documents.

*Plaintiff's document production.* Plaintiff has produced 161,415 pages of documents, in two separate document productions. Plaintiff produced the first 8,457 pages of documents on April 27, 2018. Pursuant to Rule 34(b)(2)(E)(ii), Plaintiff has identified which of those documents are responsive to which of Defendants' document requests. There are no pending motions relating to Plaintiff's first production.

Plaintiff's second document production, consisting of 152,958 pages, was made on October 1, 2018. This production is the subject of Defendants' **Motion to Require Plaintiff to Comply with Rule 34 and Fix Its Production (Dkt. No. 84)**, filed on the eve of the last status conference. Defendants contend that (1) the documents were not produced as kept in the ordinary course of business; and (2) a fraction of the emails produced were produced in a format that does not include metadata. Defendants raised these issues for the first time on October 15, 2018. On October 23, 2018, Plaintiff's counsel responded that (1) the documents were collected and produced as they were kept in the ordinary course of business; and (2) counsel was attempting to determine whether the emails produced as .pdf files could be produced with metadata. Inexplicably, Defendants filed their motion to compel six days later.

Pursuant to Rule 34(b)(2)(E)(i), Plaintiff produced these documents as they are kept in the ordinary course of business. Defendants flatly complain that the documents were "disorganized," but fail to substantiate this allegation. In fact, as evidenced by the index attached

3

as **Exhibit 1**, the documents (consisting mostly of Requests for Information and Submittals) were produced by category, as they are normally kept. Nevertheless, in order to ensure that Defendants had no possible grounds to complain about the production, Plaintiff has also identified the requests to which each document in this production is responsive, pursuant to Rule 34(b)(2)(E)(ii). (*See* Exhibit 1).[1] In other words, Plaintiff has both produced the documents as kept in the ordinary course of business and identified which documents are responsive to which requests.[2] There is nothing the Court could order Plaintiff to do that has not already been done, yet Defendants refuse to withdraw their motion.

Defendants also complain that a small fraction of the documents produced by Plaintiff consist of emails that have been printed and scanned and therefore do not include certain metadata. To be clear, Plaintiff searched for and produced more than 200 emails in their native format, with metadata. As Plaintiff has repeatedly explained to Defendants, the emails produced as .pdf files were kept as .pdf files in the ordinary course of business. These emails were maintained as attachments to Requests for Information ("RFIs") or to responses to those RFIs, documents which were maintained as .pdf files. When Plaintiff produced the RFIs and the responses to the RFIs, kept as .pdf files, it naturally produced the exhibits to those documents, also kept as .pdf files. Indeed, the vast majority of these emails were received from third parties as .pdf files and do not include Plaintiff as either sender or recipient. In other words, Plaintiff has never had access to the metadata associated with those emails, and could never produce any

---

[1] Defendants have identified a single document, ACC 9003, which they contend was mis-indexed as a communication with AMEC or a change order. However, the document is in fact a design submittal (and was produced with all of the other submittals). Submittals were sent through to AMEC for approval before they could be used on the Project (and AMEC's failure to promptly review these submittals was one of the major causes of delay on the Project).

[2] Defendants' contention that A&C's "documents have still not been produced as kept in the ordinary course of business nor are they indexed to respond to the categories of requests" is simply false.

4

such metadata.[3] Defendants have identified a handful of emails that include Plaintiff as a recipient, were maintained and produced as .pdf files, but were not also captured in the production of native email files. Plaintiff has searched its native email files for those emails and has now produced them with their associated metadata, where possible (and has offered to do the same for any other emails produced as .pdf files for which Plaintiff actually has metadata). It is unclear what else Defendants may want Plaintiff to do.

2. Status of Interrogatory Answers

*Defendants' Interrogatory Answers.* Plaintiff served interrogatories asking Defendants to identify the facts which supported a good faith basis for their allegations that (a) Plaintiff failed to satisfy all conditions precedent to payment; (b) Black Cat fully paid A&C; (c) Black Cat did not prevent A&C from performing its work; and (d) A&C did not provide adequate notice under the Miller Act. Defendants failed to identify a single fact supporting those allegations in their Answers. After meeting and conferring, Defendants admitted that they indeed had no facts supporting those allegations when they filed their Answers. While there is therefore nothing to compel, this admission has obvious Rule 11 implications (and Plaintiff has moved to strike the defenses that relate to these conclusory allegations).

*Plaintiff's Interrogatory Answers.* Plaintiff has provided fulsome responses to Defendants' interrogatories. Nevertheless, Defendants have filed a **Motion to Compel Interrogatory Responses** (**Dkt. No. 79**), complaining about Plaintiff's responses to Interrogatories 7-11, which effectively ask Plaintiff to itemize its claim. Before Defendants filed this motion, Plaintiff had already agreed to provide supplemental answers to those

---

[3] Defendants' accusation that "A&C produced the documents [as .pdf files] to prejudice the Sureties" simply has no basis in fact, as has been explained multiple times to counsel for Defendants.

5

interrogatories.[4]  Plaintiff has now served those supplemental answers, itemizing the components of its claim in a detailed chart, while also referring to the particular documents supporting each line item in that chart.  (**Exhibit 2**, Plaintiff's Supplemental Interrogatory Answers.)

Defendants do not contend that Plaintiff's Supplemental Interrogatory Answers fail to provide the information requested in Interrogatories 7-11.  Instead, they are apparently now asking the Court to order Plaintiff to identify in its interrogatory answers every document in its production that might "involve A&C's costs."  Of course, Rule 33(d) requires no such thing.  Plaintiff has not only set forth its itemized damages in the interrogatory answers, it has also identified "the records that must be reviewed" in order to provide the requested information, and need not create an index of its entire production for Defendants (although Plaintiff has already done this, as well).  Defendants' refusal to withdraw its motion is inexplicable.

3. **Status of Depositions**

To date, no witnesses have been deposed in this case.

*Third party witnesses*.  In May and June 2018, Plaintiff served deposition and document subpoenas on nine AMEC employees, each of whom was identified by Defendants as a person with knowledge of the matters at issue in this litigation.  However, these depositions were put on hold because AMEC refused to produce any documents in response to a subpoena from Plaintiff.  Now that AMEC has been ordered to produce its documents, Plaintiff expects to proceed with these depositions.

*Defendants' representative deponents*.  Plaintiff noticed Defendants' corporate

---

[4] Indeed, on October 23, 2018, before Defendants filed this motion to compel, counsel for Plaintiff wrote the following email to counsel for Defendants: "You are, of course, free to file whatever you would like to file.  However, if you would prefer to simply await my written response, which you will receive this week, you will see that a motion would be a waste of judicial resources."  And still, Defendants elected to file its motion to compel, and has indeed wasted judicial resources as a result.

6

representative deponents on April 16, 2018. However, Defendants have refused to produce their representative deponents for deposition, arguing that Plaintiff must produce its representative deponent first.

*Plaintiff's representative deponent.* Plaintiff has identified a representative deponent for all subjects in the Rule 30(b)(6) notice served by the Defendants. Defendants have filed their **Motion to Compel Organization Deponent or In the Alternative for Sanctions (Dkt. No. 44)**, despite the fact that Defendants have been fully apprised of the fact that the deponent has not yet been issued a visa to travel to the United States. It is Plaintiff's position that the parties should proceed with discovery and await a determination by the United States Embassy in Lebanon as to whether the representative deponent will be issued a visa.

Plaintiff's representative deponent, Jean Louis Cardahi, is ready and willing to travel to Chicago to testify, but has not yet been issued a visa to travel to the United States for his 30(b)(6) deposition. Mr. Cardahi applied for the visa interview in April 2018 and Plaintiff offered to make Mr. Cardahi available for a deposition in Chicago in mid-May, contingent upon his visa being issued.[5] On May 17, 2018, Mr. Cardahi had his visa interview at the United States Embassy in Lebanon. On May 30th, Mr. Cardahi submitted form DS-5535 to the Embassy, providing additional information that had been requested. On June 7th, Mr. Cardahi asked the Embassy about the status of his application and the Embassy informed him that his case was "undergoing administrative processing," which "usually lasts about 60 days or less, but can take longer in some instances." On August 3, 2018, Mr. Cardahi again inquired about the status of his visa and received a similar response. Again on September 13, 2018, Mr. Cardahi inquired

---

[5] Defendants misleadingly state that A&C flatly "represented that it would make a deponent available in 'mid-May'"—omitting the express condition that the visa must be issued first (which has always, by necessity, been included in such offers).

about the status of his visa, emphasizing the need to attend a deposition in the United States. The Embassy responded:

> While we understand and sympathize with your situation, your case is unfortunately still pending completion of administrative processing. We apologize for the delay, but our office cannot predict exactly how long completion of these procedures may take, and further, our office is unable to proceed with any visa issuance until this processing is complete. This is in accordance with U.S. immigration laws and policies.

(**Exhibit 3**, Sept. 14, 2018 email exchange.)

While the visa could be issued any day, Plaintiff cannot predict when that day will be. Importantly, Mr. Cardahi's application for a visa <u>has not been rejected</u>. There is no dispute about these facts, and Defendants have been fully apprised of the status of this issue all along.[6]

The most obvious solution for this practical problem is to simply continue with discovery, including the depositions of the AMEC witnesses and the Defendants' representative deponents, wait for Mr. Cardahi's visa to issue, and then proceed with his deposition in Chicago as soon as his visa is issued. To date, there have been no other depositions in this case (as AMEC only recently produced its documents, and Defendants had sought to stay all proceedings). Further, no discovery cutoff date has been set. If the Embassy rejects Mr. Cardahi's visa application, then the parties can revisit the matter at that time.

### a. Plaintiff offers proposed solutions, Defendants reject them all

In lieu of waiting for Mr. Cardahi's visa, Plaintiff has offered a number of potential

---

[6] Defendants contend that A&C "failed to mention that its witness is unavailable" until after the Court ruled on their motion to stay. The Court ruled on Defendants' request for a stay on September 11, 2018. Plaintiff has never represented that its "witness is unavailable," but has informed Defendants that Mr. Cardahi had not yet been issued a visa many times, including on June 21st, July 12th, July 31st and August 6th. Nothing has changed since then.

8

alternatives. (**Exhibit 4,** October 25, 2018 email from Plaintiff's counsel.)[7] First, Plaintiff has offered to make Mr. Cardahi available to testify via videoconference or teleconference. Defendants have never engaged in a discussion about this proposal with Plaintiff but instead have responded by rejecting that offer, for the first time, in the proposed status report it provided to A&C on October 8, 2018.

Second, Plaintiff has also offered to make Mr. Cardahi available to testify in Qatar or in Lebanon. Again, Defendants responded to that offer for the first time below, with objections to traveling to those locations.

Third, after receiving Defendants' draft status report, objecting to Qatar and Lebanon as locations for a deposition, Plaintiff informed Defendants that Mr. Cardahi has a Shenghen visa, which permits him to travel to 26 countries. Plaintiff offered to produce Mr. Cardahi in Austria, Belgium, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Italy, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Netherlands, Norway, Poland, Portugal, Slovakia, Slovenia, Spain, Sweden, or Switzerland. Defendants also refused to agree to travel to any of these locations unless Plaintiff agrees to "cover all costs associated with" a deposition overseas, including travel and lodging for attorneys, party representatives, support staff and a court reporter as well as paying attorneys' fees for travel time. Plaintiff, a relatively small, family-owned contractor, cannot afford to fund fees and travel costs for a team of Defendants counsel, staff and representatives. In contrast, Defendants are two very large insurance companies that could certainly afford those costs if they were actually interested in a resolution of this issue short of waiting for Mr. Cardahi's visa to issue.

---

[7] Defendants falsely state that Plaintiff has "confirmed that it is unable to bring a single witness to the United States . . .." In fact, Plaintiff has never stated that Mr. Cardahi will be unable to come to the United States. Plaintiff simply offered alternatives in the event Defendants would like to speed the process along.

9

Because Defendants have objected to these alternatives, the only sensible path forward is to wait until the U.S. Embassy in Lebanon either issues a visa for Mr. Cardahi or rejects his application for a visa.

**Conclusion**

A&C has gone above and beyond to accommodate the Sureties' purported concerns with the discovery process to date. The motions filed by the Sureties present purported "problems" that A&C agreed to investigate, did investigate, and addressed—in its attempts to assuage the Sureties' grievances, A&C has far exceeded its responsibilities under the Federal Rules of Civil Procedure. Enough is enough. The Sureties' Motions to Require Plaintiff to Comply with Rule 34 and Fix its Production (Dkt. No. 84), Motion to Compel Interrogatory Responses (Dkt. No. 79), and Motion to Compel Organization Deponent or in the Alternative for Sanctions (Dkt. No. 44) should each be denied.

The Sureties' one-sentence affirmative defenses are plainly deficient, for the reasons set forth in A&C's Motion to Strike Affirmative Defenses (Dkt. No. 81), and A&C respectfully requests that the Court strike the affirmative defenses and provide any further relief as the Court finds just and equitable.

Dated: November 14, 2018

    Respectfully submitted,

    A&C CONSTRUCTION &
    INSTALLATION CO. WLL

    By: /s/ Abram Moore

    Abram Moore (ARDC#6278871)
    Nicole C. Mueller (ARDC#6309735)
    K&L GATES LLP
    70 West Madison, Suite 3100
    Chicago, Illinois 60602

                Phone: (312) 372-1121
                abram.moore@klgates.com
                Attorneys for A&C Construction &
                Installation Co. WLL

## **CERTIFICATE OF SERVICE**

Under penalties as provided by law, the undersigned, an attorney, hereby certifies and states that he caused a true and an accurate copy of the foregoing **PLAINTIFF'S STATUS REPORT REGARDING PENDING MOTIONS AND DISCOVERY DISPUTES** to be served this 14th day of November 2018 upon the counsel listed below by delivery via the United States district court for the Northern District of Illinois' CM/ECF electronic filing system upon the following counsel of record:

Robert E. Tonn
Colin P. Smith
William Farley
Holland & Knight LLP
131 South Dearborn Street
30th Floor
Chicago, Illinois 60603
Phone: (312) 263-3600
robert.tonn@hklaw.com
colin.smith@hklaw.com
william.farley@hklaw.com

*Attorneys for Zurich American Insurance Co. and The Insurance Company of the State of Pennsylvania*

Daniel B. Pasternak
Brent R. Owen
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado 80202
daniel.pasternak@squarepb.com
brent.owen@squarepb.com

*Attorneys for Zurich American Insurance Co. and The Insurance Company of the State of Pennsylvania*

s/      Abram I. Moore