**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| United States of America for use and benefit of A&C Construction & Installation. CO. WLL, | Case No. 1:17-cv-04307 |
| Plaintiff, | Assigned Judge: Harry D. Leinenweber |
| v. | |
| Zurich American Insurance Company and The Insurance Company of the State of Pennsylvania, | Designated Magistrate Judge: Marie Valdez |
| Defendants. | |

## DEFENDANTS' STATUS REPORT REGARDING PENDING MOTIONS IN LIEU OF JOINT REPORT (DKT. 87)

On October 31, 2018, in response to Defendants' suggestion that several outstanding discovery disputes be referred to Magistrate Valdez for resolution, the Court instructed the parties to submit a joint status report regarding the four motions currently pending. (Dkt. 87). After repeated attempts to confer on the language and format of a joint submission, the parties have been unable to prepare an acceptable joint report and therefore Defendants submit this separate statement in order to comply with the Court's November 14, 2018 deadline.

Plaintiff's unwillingness to agree on even the format of a joint report on the status of pending motions is telling, and Defendants' arguments herein weigh in favor of assigning a Magistrate to supervise discovery in this case. While not wanting to waste an inordinate amount of the Court's time on this dispute, the history of how we got here is instructive.

By agreement, Defendants prepared an initial draft of the joint statement and on November 8, 2018, Defendants sent counsel for Plaintiff the document attached hereto as **Exhibit 1**; *see also* **Exhibit 2**, B. Owen Transmittal Email, Nov. 8, 2018. That document included a location for "Plaintiff's position," and A&C's counsel responded that A&C would

1

"add our positions."  This is consistent with the Court's order requesting "a joint status report regarding all pending motions." (Dkt. 87). Further, Defendants' proposal set forth Defendants' position on each of its three pending motions in chronological order (Docs. 44, 79 and 84) and asked Plaintiff to insert its responses and also to prepare its proposed statement regarding Plaintiff's motion to strike (Dkt. 81), to which Defendants would then respond.

On November 13, 2018, one day before the parties were to submit their joint report, counsel for Plaintiff circulated a rewrite of the initial draft that was "joint" in name only. Rather than complying with this Court's clear instruction, Plaintiff's rewrite (attached hereto as **Exhibit 3**) put its own arguments on all four pending motions into the first eight pages of the document and attached Defendants' prior draft at the back. In other words, Plaintiff's proposal was two separate statements contained in the same document, rather than a true joint report, and it attempted to lead with Plaintiff's positions even though three of the four disputes were raised by Defendants. As counsel for Defendants attempted to explain to Plaintiff's counsel, a joint submission regarding pending motions should fairly present the arguments raised by the motion first, followed by the respondent's position. And the issues should be addressed in chronological order to appraise the Court of "pending motions." (Dkt. 87).  Plaintiff's proposal attempts to flip that organization on its head, which can only confuse the issues presented in Defendants' three discrete, properly briefed and noticed motions. Defendants could simply not agree to prejudice their valid motions by agreeing to the intentionally confusing format Plaintiff insisted upon.

## **DEFENDANTS' STATUS REPORT**

Discovery is at a standstill because A&C cannot produce a 30(b)(6) witness for a deposition noticed in March. A&C refuses to produce the witness who signed its responses to the Sureties' First Written Discovery—A&C Executive Manager, Joseph Hakmeh. Instead, A&C

2

insists that its witness who cannot come to the United States is the *only* properly designated witness, and that A&C should not be required to cover the costs of deposing that witness outside of this jurisdiction. Contrary to Plaintiff's representations, discovery deadlines have previously been set in this matter, but they have been vacated because Plaintiff has not produced a witness and only last month produced the bulk of its documents.

As mentioned above, on October 31, 2018, this Court requested a "joint status report regarding **all pending motions**." (Dkt. 87). Defendants provided Plaintiff a draft of the Status Report one week in advance. Plaintiff's provided Defendants its status report the night before this filing was due. Citing no case law or rule (unless A&C adds it in today immediately before filing), A&C's "status report" addresses numerous issues other than the pending motions. A&C's approach—addressing issues that fall outside the scope of the Court's Order on the eve of filing—prejudices the Sureties and violates this Court's Order. Defendants limit their Status Report to "pending motions." (Dkt. 87.)

I. **Defendants' Motion to Compel Organization Deponent or In the Alternative for Sanctions (Dkt. 44)**.

A&C cannot designate an individual to testify in this Court about its $8,000,000 claim. In response, A&C suggests that it can someday, and that the Sureties must simply wait however long it takes for A&C to produce a single Rule 30(b)(6) witness. It's been eight months since the Defendants noticed the deposition, and over one year since A&C filed its lawsuit. A&C cites no precedent for the notion that a Defendant is required to wait for Plaintiff's convenience (or stipulate to unacceptable alternatives) for the Plaintiff to produce a witness who can testify to the basic facts of its claim. *See Monetti, S.P.A. v. Anchor Hocking Corp.*, No. 87 C 9594, 1992 U.S. Dist. LEXIS 5666, *7 (N.D. Ill. April 7, 1992) (Leinenweber, J.) (compelling plaintiff to produce witness for a Rule 30(b)(6) deposition "within 14 days of this order"; opining: "Plaintiff has

3

elected to bring suit in this district and will not be heard now to complain that traveling here is burdensome.").

The Sureties request an order excluding A&C's Rule 30(b)(6) testimony. If that sanction is not awarded, A&C should bear all the costs associated with making its witness available in person in a foreign jurisdiction.

        a. *The Sureties' seek an order compelling a witness to testify in this Court, appropriate sanctions, or cost shifting*.

The Sureties noticed A&C's Rule 30(b)(6) deposition on March 8, 2018, and scheduled the deposition for April 10, 2018. (Dkt. 44-1, letter coordinating deposition). A&C failed to produce a witness, and the Sureties moved to compel A&C's compliance with Rule 30(b)(6) on April 24, 2018. (Dkt. 44). A&C has not responded to the Sureties' Motion, but it previously represented that it would make a deponent available in "mid-May." That date came and went, as did subsequent tentatively scheduled deposition dates. Notably too, A&C opposed A&C's request for a stay but failed to mention that its witness is unavailable until after this Court ruled on that issue. A&C contends that issues with its witness's ability to obtain a travel visa have been responsible for the nearly eight month delay in producing a company witness.

It is now November 2018 and A&C recently confirmed that it is unable to bring a single witness to the United States to testify to *any* of the noticed topics. (*See* Dkt. 44-2, Sureties Rule 30(b)(6) notice). In an email on October 26, 2018, A&C represented that the "U.S. Embassy in Lebanon still has not issued a visa for A&C's representative deponent, Jean Louis Cardahi. We believe this could be because he is a person of political interest (having previously served as the Minister of Telecommunications of Lebanon, among other positions)." **Exhibit 4**, Oct. 25, 2018 Email from Abe Moore to Defendants. A&C refuses to designate a witness other than Jean Louis Cardahi, its Managing Partner, even though other employees were actively involved in the

project and contracts at issue. In fact, A&C Executive Manager, Joseph Hakmeh verified A&C's

Responses to the Sureties' First Set of Interrogatories. Those Interrogatories overlap significantly

with the issues noticed in the Sureties' 30(b)(6) notice. (The first noticed issue for the Rule

30(b)(6) is "A&C's answers to interrogatories in this case.") And in verifying those Interrogatory

responses, Mr. Hakmeh indicated that he and other employees—not Jean-Louis Cardahi—are the

appropriate witnesses for a 30(b)(6) deposition:

> I, Joseph Hakmeh, declare that I am Executive Manager for A&C
> Construction & Installation Co., WLL ("A&C") and authorized to
> make this Verification on behalf of A&C. I have read A&C's
> Answers and Objections to Defendants' First Set of
> Interrogatories. The A&C employees who have provided
> information set forth in A&C's answers have confirmed to me that
> they believe such information to be true based upon their inquiries
> and research.

In any event, A&C's refusal to consider a witness other than the unavailable Mr. Cardahi

means that it cannot meet the requirements of Rule 30(b)(6) and "designate one or more

officers . . . to testify on its behalf." Fed. R. Civ. P. 30(b)(6).

A&C seeks over $8,000,000 for work it allegedly performed. A&C produced hundreds-

of-thousands of pages of disorganized documents, many of which contradict A&C's contention

that it performed work and didn't get paid. As a result, this case largely turns on A&C's

credibility. *Cf. United States ex rel. Ascher Bros. Co. v. Am Home Assur. Co.* No. 98 C 0995,

2003 U.S. Dist. LEXIS 21388, *44 (March 18, 2003 N.D. Ill. 2003) (crediting subcontractor's

testimony as "credible"). The notion that A&C—the party who filed this lawsuit in this Court—

cannot make a *single* witness available to testify in person undermines the "strong preference of

Anglo-American courts for live testimony, especially in a case that turns on the credibility of

testimony contradicted by other witnesses." *Griman v. Makousky*, 76 F.3d 151, 153 (7th Cir.

1996) (holding that no "exceptional circumstances" existed excusing plaintiff's failure to provide

live testimony where plaintiff asserted claim for damages); Fed. R. Civ. P. 32(4)(E) (deposition testimony is only a substitute for live testimony in "exceptional circumstances . . . with due regard to the importance of live testimony in open court").

i.  <u>Exclusion of A&C's testimony is the appropriate sanction.</u>

Given the importance of live testimony, the late stage of discovery in this case, and given A&C's over-6-month-long delay in making available a *single* witness, the appropriate sanction is excluding this testimony. Put simply, A&C has failed to comply with Rule 30(b)(6) and the appropriate sanction is exclusion. Fed. R. Civ. P. 37(b)(2)(A)(i) (where a party fails to obey an order under Rule 30(b)(6) a sanction including "directing that matters embraced in the order . . . be taken as established" is appropriate); *see Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (explaining that "exclusion of non-disclosed evidence is automatic and mandatory"). Since A&C cannot (or refuses to) "designate" a witness as the Rule requires, it should be prevented from introducing evidence on the noticed topics at trial. *See Martin Cty. Coal Corp. v. Universal Underwriters Ins. Servs.*, No. 08-93-ART, 2011 U.S. Dist. LEXIS 22150, *15 (Rule 30(b)(6) prohibits "sandbagging" and a party that "has no knowledge concerning an area of inquiry . . . cannot thereafter argue a contrary position" (citation omitted)).

ii.  <u>If this Court determines a lesser sanction is appropriate, cost-shifting is the appropriate remedy.</u>

A&C proposes several alternatives, including a telephonic or videoconference deposition. If A&C requires that extraordinary relief it should request it—not insist the Sureties stipulate to the prejudice of having to depose a plaintiff in a document-intensive case over the phone. As evidenced by its status report citing no case law, A&C hopes to avoid briefing this issue because there is virtually no support for its position that a plaintiff—the Rule 30(b)(6) deponent for a company—can avoid testifying in-person for its claim seeking $8,000,000. *See United States v.*

6

*Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999) ("plaintiff . . . fails to cite a single case . . . wherein the plaintiff was permitted to have his deposition taken telephonically"). "As a general rule, a plaintiff will be required to make himself . . . available for examination in the district in which suit was brought. Since plaintiff has selected the forum he . . . will not be heard to complain about having to appear there for a deposition." *Stubbs v. McDonald's Corp.*, 2005 U.S. Dist. LEXIS 2345, *1 (D. Kan. Jan 26, 2005). A plaintiff takes the "volitional step of initiating the lawsuit or claim [for which he] stands to gain a substantial monetary sum" and should "submit himself to question by the defendant regarding the basis for the claim." *Id.*; *see Clem v. Allied Van Lines Int'l Copr.*, 102 F.R.D. 938, 940 (S.D.N.Y. 1984) ("defendant is entitled to depose the plaintiff face-to-face in order to adequately prepare for trial").

Practically too, a telephonic or videoconference deposition is appropriate only "for relatively brief examinations that do not involve numerous documents[.]" Manual for Complex Litigation (Fourth) § 11.425 (2004). A&C has produced more than 150,000 pages of documents (over 18,000 documents) related to the dispute. Its current production ends at ACC-0161415, and A&C's production is not complete. Deposing A&C's 30(b)(6) witness over Skype while trying to manage and introduce voluminous exhibits will prejudice the Sureties, is inconsistent with basic notions of due process, and is unacceptable. A videoconference deposition will not work.

Further, the testimony expected from A&C's 30(b)(6) witness is central to this dispute and hotly contested. "Telephone depositions are not recommended for obtaining controversial testimony. You cannot observe the impact of your questions or the witness' nonverbal responses." *Rock Springs Vista*, 185 F.R.D at 604 (citation omitted). A telephonic or videoconference deposition of A&C's corporate representative will not work.

A&C offers to make its Rule 30(b)(6) witness available in either Lebanon or Qatar—and

7

now at the last minute other foreign locations. The United States State Department identifies Lebanon as subject to a Level 3 travel advisory; United States citizens should avoid Lebanon because of "crime, terrorism, and armed conflict."[1] Compelling a deposition in Lebanon is not reasonable or appropriate.

A&C alternatively suggests that counsel travel to Qatar. Qatar is 7,000 miles from Chicago, a flight takes over 13 hours, and a one-way ticket costs thousands of dollars. The Sureties should not be required to undertake those extraordinary measures to gain a basic understanding of A&C's lawsuit.

*If* this Court declines to award sanctions—and *if* an in-person deposition in Qatar is the only option—A&C should pay the Sureties' cost and fees to take that deposition, including the significant additional expenses associated with holding that deposition in a foreign jurisdiction, including:

- All lodging (attorneys, party, support staff, court report) and conference room for the deposition.

- The significant attorneys' fees incurred in traveling to-and-from Qatar.

- The transportation costs—air fare (business class), ground transportation, and meals associated with reaching the deposition in Qatar.

- All other fees reasonably incurred to depose A&C's 30(b)(6) witness in Qatar.

This burden shifting is appropriate given the extraordinary relief A&C seeks. Fed. R. Civ. P. 26(c)(1)(B) ("The court may, for good cause . . . protect a party from . . . undue burden or expense" by allocating "expenses for the disclosure of discovery"). A&C brought this suit in this Court, and it is unfair to force the Sureties to shoulder significant expense because A&C cannot otherwise present its case.

---

[1] Travel.State.Gov, U.S. Dep't of State, *available at* https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/lebanon-travel-advisory.html (last accessed Nov. 8, 2018).

8

The Sureties request an order excluding A&C's Rule 30(b)(6) testimony or—if A&C's proposal to produce its witness in a foreign country is accepted—a cost-shifting award.

## II. __Defendants' Motion to Compel Interrogatory Responses (Dkt. 79).__

### a. *The Sureties seek a complete response to the Interrogatories addressing the basics of A&C's claim.*

In addition to failing to produce a single witness to support its claim, A&C also refuses to provide complete answers to the Sureties' Interrogatories. The Sureties' Interrogatories 7-11 ask A&C to identify the "labor, services, material, equity, and costs" that A&C claims to have provided and seeks to recover for in this Miller Act lawsuit. (Dtk. 79-1, A&C's Answers to Defendants' First Set of Interrogatories). A&C initially provided incomplete responses and referred to Rule 33(d) without identifying the specific documents, as the rule requires. Fed. R. Civ. P. 33(d). After months of conferral, A&C agreed to revise its responses; after several more months of conferral, A&C supplemented its responses on October 29, 2018, *after* the Sureties filed the pending Motion to Compel responses. (*See* Dkt. 79). That belated supplement did not cure the defects in Plaintiff's prior responses.

In its recent incomplete supplemental responses, A&C only identifies documents from its first production of some 8,000 pages of records produced back on April 27, 2018. A&C does not identify any documents or costs from its second production (94% of the documents A&C produced in this matter) are responsive to the Interrogatories. And the second production—over 150,000 pages of documents—includes change orders with costs and other correspondence that appear to involve A&C's costs. During a recent call to try and resolve this issue without the Court's involvement, A&C's counsel categorically refused to correct its Interrogatory Responses to identify documents from its second production. A&C repeats that representation in its status report, claiming—without citing the Rule or any case law—that Rule 33(d) only requires A&C

identify a small portion of the relevant documents.

A&C is incorrect: "Each interrogatory must . . . be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Rule 33(d), moreover, is only an acceptable alternative if a party identifies "the records that must be reviewed." A&C is not allowed to not answer the interrogatories and then identify only some of the records. *See Local 194, Retail, Wholesale & Dep't Store Union v. Standard Brands, Inc.*, No. 74 C 587, 1979 U.S. Dist. LEXIS 14518, *3 (N.D. Ill. Feb. 9, 1979) (compelling "precise information requested" where party failed to identify all specific documents relied on an interrogatory response).

Nor is there any basis for allowing A&C to only address some of the records. The case law provides the exact opposite: a voluminous production requires greater specificity if a party relies on Rule 33(d) instead of providing an answer. *See Johnson v. HIX Wrecker Serv., Inc.*, 528 Fed. App. 636, 640 (7th Cir. 2013) ("The level of specificity required by Rule 33(d) necessarily depends on a number of factors, including the amount of discovery[.]").

The Sureties seek an order compelling A&C to provide complete responses to Interrogatories 7-11, as required by the Federal Rules of Civil Procedure.

### III. <u>Plaintiff's Motion to Strike Affirmative Defenses (Dkt. 81)</u>.

The Sureties will file a Response to Plaintiff's "disfavored" and meritless Motion to Strike. To place that filing in context: A&C filed it on the eve of the most recent status conference while facing a number of discovery motions addressing A&C's inadequate discovery, including its continued failure to produce a Rule 30(b)(6) witness for a deposition noticed in March. A&C's Motion to Strike—which does not even include the answer it seeks to strike as an exhibit—is a distraction from the substantive problems with A&C's case. Compounding the distraction, A&C uses a footnote to level a serious allegation: that the Sureties have "violated

Rule 11." As its obscured location buried in a footnote portends, that contention is meritless. A&C's suggestion is particularly ironic in a motion to strike, which the Seventh Circuit disfavors because they are "often interposed to create delay." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991); Fed. R. Civ. P. 11(b)(1)(2) (a signature on a pleading is a representation that the filing is not made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

In any event, this Court's judicial resources are best spent resolving the serious deficiencies with A&C's discovery and moving this case towards a resolution

### IV.    Defendants' Motion to Require Plaintiff to Comply with Rule 34 and Fix Its Production (Dkt. 84).

A&C's representations about its production are incorrect. The documents are not produced as kept in the ordinary course of business, are not properly indexed, and do not comply with the Rule.  Even a cursory review of A&C's documents demonstrates:

- A&C has produced emails to-and-from A&C as PDFs.  Emails to and from A&C are not in the ordinary course of business kept as PDFs.

- Except for 11 emails produced after conferral, A&C has still not produced a significant number of emails as emails.  Instead, A&C represents that the Sureties should identify PDF emails and then A&C will fix them. That is not what the Rules require.

- The index does not identify the documents with the correct RFP.

- As a result, the Sureties cannot properly evaluate the production to ensure it is complete.

A&C bears the burden of proving—not simply asserting in conclusory fashion—that its production complies with the Rules. This includes producing email correspondence as email correspondence; it also includes A&C producing documents with the available metadata and not as a haystack. (Dkt. 84).

Through this Motion, the Sureties previously sought an index identifying which documents A&C produced are responsive to which of the Sureties' requests. But A&C—after refusing to provide that index and requiring the Sureties to move to compel—provided one in its response to the Sureties' Motion. (*See* Dkt. 86). However, that belated index did not cure the deficiency.

The documents have still not been produced as kept in the ordinary course of business nor are they indexed to respond to the categories of requests. That the documents are not produced as kept in the ordinary course is explained more fully in the Sureties' Motion, but also easily confirmed by the fact that A&C has produced emails as scanned PDFs. **Emails to-and-from A&C are not kept in the ordinary course of business as PDFs**, and A&C's representations along those lines are incorrect. A&C represented that it did not possess the scanned copies of PDF emails in email format. Then, after further back and forth, A&C conceded that some emails were produced as PDFs, but invited the Sureties to "identify" the emails produced as PDFs so that A&C might reproduce them in the proper format. **Exhibit 5**, Nov. 12, Email From Nora Becerra to B. Owen ("However, we are willing to conduct a targeted search for any emails ***you identify*** that were produced as .pdfs which you believe to be accessible to our client in native format (in addition to the few you cite in your email)."

A&C's suggestion that the burden shift to the Sureties to "identify" documents in A&C's possession is nonsense. A&C bears the burden of making a proper production and the burden to demonstrate through evidence (not repeatedly state in conclusory fashion) that the documents have been produced with the appropriate metadata and as kept in the ordinary course. The documents contradict A&C's representations; they reflect that A&C is the recipient for the emails at A&C email addresses with the domain A&C still lists on its website

12

(@andcqatar.com[2]):

### SEQ 001 - Ceiling Fan Switch
BPC3-Project
Sent:    Sunday, December 09, 2012 9:42 AM
To:    jeff.jernigan@amec.com
Cc:    Tib.Costin@amec.com; Jeffrey.m.brown@amec.com; amf@aandcqatar.com; rjd@aandcqatar.com; ssu@aandcqatar.com; cmb3@aandcqatar.com
Attachments:SEQ 001.pdf (363 KB)

(**Exhibit 6**, ACC-008510)

## BPCIII RFI 007 Un-Armored Cable
Jernigan, Jeff [jeff.jernigan@amec.com]
Sent:    Saturday, March 16, 2013 3:44 PM
To:    BPC3-Project; Acs [acs@aandcqatar.com]; amf@aandcqatar.com
Cc:    Costin, Tib I [Tib.Costin@amec.com]; Brown, Jeffrey M [jeffrey.m.brown@amec.com]
Attachments:RFI-0007 Cables (Gov't Res~1.pdf (60 KB)

(**Exhibit 7**, ACC-008553)

It is not the Sureties job to double-check A&C's work and identify every email in A&C's possession. Fed. R. Civ. P. 26(b). Further, a search of the PDFs suggest that there are potentially one-thousand emails as PDFs among A&C's production. Emails kept in the ordinary course as emails, even if they may also be kept as PDFs. The Sureties request an order requiring A&C to fix its production. *See Alford v. Aaron Rents, Inc.*, No. 3:08-cv-683 MJR-DGW, 2010 U.S. Dist. LEXIS 67790, *70 (S.D. Ill. May 17, 2010) (a party's failure to properly produce documents may mask "a hope to obscure" damaging documents (citation omitted)).

Along those lines, A&C's alleged indexing does not match with the actual document production. A&C identifies almost every document in the second production as responsive to either "communication with AMEC" or a change order. Yet many of the documents do not appear to be either. *See* **Exhibit 8**, ACC-009003 (NAFFCO instruction manual for fire

---

[2] *Available at* http://www.aandcqatar.com/en/contactus/.

suppression work). Yet again, A&C suggests that the Sureties should identify additional flaws with A&C's discovery and then A&C will perhaps fix its index. That approach defeats the entire purpose of the discovery rules, which place the obligation of complying with the production requirements on A&C. It is not the Sureties job to ensure A&C's production is accurate. And, more importantly, the Sureties cannot reasonably navigate or manage the documents because of the way that A&C produced them.

**Agreement concerning discovery into Fire Suppression Agreement portion of A&C's claim.**

On September 11, 2018, this Court stayed the "Fire Suppression Agreement" portion of this case. Sept. 11, 2018, Order re: Motion to Stay Proceedings, at 3 (Dkt. 76). To save the parties' resources and reduce duplication of discovery should the stay ever be lifted, A&C requested and the Sureties have agreed that fact discovery into the "Fire Suppression Agreement" portion of the case can move forward. Consistent with that agreement, A&C has agreed to produce in this matter all documents produced by the parties in A&C's International Chamber of Commerce Arbitration against nonparty Black Cat Construction and Engineering Company.

Dated: November 14, 2018.

> Defendants Zurich American Insurance Co. and The Insurance Company of the State of Pennsylvania
>
> s/____*Brent Owen*_____
>       One of Their Attorneys
>
> SQUIRE PATTON BOGGS (US) LLP
> Brent R. Owen
> 1801 California Street, Suite 4900
> Denver, CO 80202
> (303) 303-894-1776 (Telephone)
> (303) 303-894-9239 (Facsimile)
> Brent.owen@squirepb.com

14

SQUIRE PATTON BOGGS (US) LLP
Daniel Pasternak
1 E. Washington St., Suite 2700
Phoenix, AZ 85004
(602) 528-4000 (Telephone)
(602) 253-8159 (Facsimile)
Daniel.pasternak@squirepb.com

HOLLAND & KNIGHT, LLP
Robert E. Tonn
Colin P. Smith
William Farley
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603
(312) 263-3600 (Telephone)
(312) 578-6666 (Facsimile)
robert.tonn@hklaw.com
colin.smith@hklaw.com
william.farley@hklaw.com

## CERTIFICATE OF SERVICE

Under penalties as provided by law, the undersigned, an attorney, hereby certifies and states that he caused a true and an accurate copy of the foregoing **DEFENDANT'S STATUS REPORT** to be served this 14th day of November 2018 upon the counsel listed below by delivery via the United States district court for the Northern District of Illinois' CM/ECF electronic filing system.

Abram Moore
Nicole Mueller
K&L GATES LLP
70 West Madison, Suite 3100
Chicago, IL 60602

*s/       Brent Owen*